R. Michael Shickich, #6-3015
Law Offices of R. Michael Shickich, LLC
1204 East 2nd Street,
Casper, Wyoming 82601
Telephone: 307-266-5297
Facsimile: 307-266-1261
rms@injuryfirm.net
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JOHN DAVID AUTHEMENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) |
| BLAZIN WINGS, INC., | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

John David Authement (hereafter referred to as "plaintiff"), by and through his attorney, R. Michael Shickich, and for his Complaint against Blazin Wings, Inc. (hereafter referred to as "defendant") alleges:

### I.   PARTIES JURISDICTION AND VENUE

1.   At all times relevant hereto, plaintiff, John Authement, has been a resident of Casper, Natrona County, Wyoming.

2.   For purposes of diversity jurisdiction, plaintiff is a citizen of the state of Wyoming.

3.   At all times relevant hereto, defendant, Blazin Wings, Inc. was and is a for profit corporation organized under the laws of the State of Minnesota, with its principal place of business in Atlanta, Georgia.

4. For purposes of diversity jurisdiction, defendant is a citizen of both Minnesota and Georgia.

5. The plaintiff has incurred current medical expenses of at least $54,231.77 and additional medical expenses reasonably foreseeable to be incurred in the future. The plaintiff has incurred current wage losses of at least $66,285.00 and additional wage losses reasonably foreseeable to be incurred in the future.

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 as the plaintiff and defendant are citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

7. Jurisdiction is proper.

8. Venue is proper.

9. Service of process is proper.

## II.   STATEMENT OF FACTS

10. Plaintiff incorporates the previous allegations as if fully set forth herein.

**The defendant's premises**

11. Upon information and belief, the defendant owned, leased, possessed, and/or occupied the premises located at 5071 E. 2nd Street, Casper, WY 82609 (hereinafter "Premises") on November 3, 2019.

12. The defendant operated the premises under the trade name of Buffalo Wild Wings Grill & Bar (hereinafter "Buffalo Wild Wings"). Included as part of the Premises are restrooms to be used by defendant's customers.

13. On November 3, 2019, the plaintiff was having dinner with his two daughters, his son, and his son's girlfriend at Buffalo Wild Wings. He rose from his table to visit the men's restroom. There was a slippery substance that had accumulated on the floor near the entrance to the men's

restroom. This caused the plaintiff to lose his footing and fall, breaking his right shoulder and injuring his arm.

14. The plaintiff was unable to move his right arm and was in extreme pain. His son came over and helped the plaintiff onto a nearby chair.

15. The defendant's shift manager called 911, but chose not to offer any assistance or check on the plaintiff's condition.

16. Subsequently, Wyoming Medical Center EMS arrived and stabilized the plaintiff's arm and shoulder and prepared to transport the plaintiff to the hospital.

16. Defendant's shift manager prevented the EMTs from evacuating the plaintiff from the restaurant. The manager demanded payment in full. The plaintiff had a broken shoulder and injured arm. He was unable to access his wallet. The EMTs extracted the wallet out of the plaintiff's pocket and provided the plaintiff's credit card bill to the defendant's manager so that the plaintiff could be evacuated.

17. The defendant maintains and/or is responsible for maintaining its Premises, including the aisles between tables and the areas in, adjacent, and leading to the restrooms.

18. The defendant's restrooms are provided for its customers and are regularly visited by the customers.

19. The entrance to the restrooms at the defendant's Premises is located within a few feet of both the main entrance to the restaurant and the podium where defendant has an employee greeting customers before they are taken to a table.

20. Defendant chose to ignore its own safety policies and systems as well as common sense, thus exposing its customers, including the plaintiff, to a dangerous condition:

a) Defendant chose not to inspect the area leading into the restrooms with sufficient frequency to discover dangerous conditions caused by slippery substances on the floor;

b) Defendant chose not to inspect the condition of floors in high traffic areas such as the restrooms more frequently, even though those high traffic areas are where the danger caused by slippery substances is greatest;

c) Defendant chose not to inspect the condition of the floor in and near the restrooms more frequently during peak business hours, even though those are the times when accumulation of a slippery substance on the floors was most likely;

d) Defendant chose not to train its staff to always be aware of slippery substances on the Premises floors and to report the danger immediately.  For example, defendant chose not to train its employees who greet new customers at the restaurant entrance to frequently inspect the nearby floor leading into the restrooms and to cause any dangers to be addressed;

e) Defendant chose to ignore the need for more frequent inspections of the floor in and near the restrooms considering its proximity to the entrance where customers could track in snow or water on their shoes;  where customers using water and liquid soap on their hands and face in the restrooms might drip those substances as they exited the restrooms; and where customers might step in those substances on the restroom floor and track those substances out into the restaurant;

f) Defendant chose not to immediately place signs or cones warning customers accessing the restroom area that a slippery substance was on the floor;

g) Defendant chose not to promptly clean that substance off the floor before the plaintiff entered the area; and,

h) Defendant knew that customers approaching the restrooms are looking at eye level for the correct men's or women's restroom door to enter so that the risk presented by any liquids on the floor would not be seen by customers. This risk was even more difficult for customers to discover because the defendant chose subdued lighting in the restrooms area, an area even darker during evening hours. As such, this danger was more readily apparent, known, and recognizable to Blazin' Wings than it was to customers including the plaintiff.

**Plaintiff's Injuries**

21. Plaintiff sustained serious injuries when he fell at defendant's Premises on November 3, 2019 including:

- Impaction fracture of the superolateral aspect of the humeral head;
- Fracture of the anterior inferior glenoid and associated labrum;
- Rotator cuff tendinopathy;
- Rotator cuff partial tear of the supraspinatus tendon;
- Rotator cuff fluid containing cleft undercutting the superior labrum – superimposed tear; and,
- Right hand numbness and tingling.

22. After the plaintiff was transported by ambulance to the Emergency Room at Wyoming Medical Center, doctors performed a reduction of the plaintiff's "anteriorly dislocated right shoulder."

23. Emergency room records on November 7, 2019 document the plaintiff again presented with a "recurrence of right shoulder anterior dislocation and fracture" requiring another reduction of the plaintiff's dislocated right shoulder.

24. Surgery records on November 15, 2019 document the plaintiff underwent Latarjet surgery to cut and move the coracoid bone with the conjoined tendon to fill in the bony defect in the

glenoid.  Surgery confirmed plaintiff's injuries as right anterior shoulder dislocation with a bony Bankart lesion, bony Hill-Sachs lesion, and an off-track dislocation.

25. Plaintiff's post-surgery appointment on December 2, 2019 documents persistent and severe pain in the plaintiff's right shoulder along with numbness, and diminished sensation in his right thumb and radial half of his index finger.

26. Physical therapy sessions from December 2019 through early March 2020 document pain, stiffness, and soreness in the plaintiff's right shoulder, numbness and tingling in his right hand, and periodic swelling in his right deltoid region.

27. An April 2020 CT scan of the plaintiff's right shoulder documents the screws used as part of the Latarjet surgery were loose and backing out, there was non-union of the Latarjet procedure, and another surgical repair might be required.  The plaintiff's surgeon also documents  six months after he was injured, the plaintiff had not achieved full range of motion of his right shoulder and arm and had not been able to return to work.

### III.    NEGLIGENCE

28. Plaintiff incorporates previous allegations as if fully set forth herein.

29. The defendant had a duty to keep its floor safe from hazards that create a danger to its customers.  Defendant breached this duty.

30. The defendant had an affirmative duty to protect visitors from a hazard.  Defendant breached this duty.

31. The defendant knew or should have known that a substance left on the floor created an unnatural and potential danger to its customers.

32.     As a restaurant owner with a national market, the defendant knew that substances frequently spill on the floor creating a dangerous condition. Further, that such danger is more readily apparent, known, and recognizable to the restaurant owner than it is to customers.

33.     Defendant's acts and omissions include but are not limited to those set forth in paragraph 20 (a-h) herein.

34.     Defendant's acts and omissions and breaches of duty represent a systems failure by defendant that caused plaintiff to suffer substantial bodily injury.

**Compensatory and Punitive damages**

35.     Defendant's acts and omissions, including but not limited to acts and omissions that represent defendant's breaches of duty were highly unreasonable conduct constituting an extreme departure from ordinary care. Acts and omissions evidencing defendant's extreme departure from ordinary care include but are not limited to:

   a) Defendant chose not to inspect the area leading into the restrooms frequently enough to discover dangerous conditions caused by slippery substances on the floor;

   b) Defendant chose not to inspect the condition of floors in high traffic areas such as the restrooms more frequently, even though those high traffic areas are where the danger caused by slippery substances is greatest;

   c) Defendant chose not to inspect the condition of the floor in and near the restrooms more frequently during peak business hours, even though those are the times when accumulation of a slippery substance on the floors was most likely;

   d) Defendant chose not to train its staff to constantly inspect the Premises floors for slippery substances. In particular, defendant chose not to train its employees who greet new customers, who are stationed at the entrance to the restaurant, and who are positioned only

a few feet away from the restroom area, to frequently inspect the floor leading into the restrooms;

e) Defendant chose to ignore the need for more frequent inspections of the floor in and near the restrooms considering its proximity to the entrance where customers could track in snow or water on their shoes; where customers using water and liquid soap on their hands and face in the restrooms might drip those substances as they exited the restrooms; and where customers might step in those substances on the restroom floor and track those substances out into the restaurant;

f) Defendant chose not to immediately place signs or cones warning customers accessing the restroom area that a slippery substance was on the floor;

g) Defendant chose not to promptly clean that substance off the floor before the plaintiff entered the area; and,

h) Defendant knew that customers approaching the restrooms are looking at eye level for the correct men's or women's restroom door to enter so that the risk presented by any liquids on the floor would not be seen by customers. This risk was even more difficult for customers to discover because the defendant chose subdued lighting the restrooms area, an area even darker during evening hours.

36. Defendant's failure to discover and remedy a dangerous condition is evidence of a culpability that is more than mere mistake resulting from inexperience, or mere thoughtlessness, inadvertence, or simple inattention.

37. Upon information and belief, defendant's acts and omissions were willful and wanton misconduct in reckless disregard of the consequences, and under such circumstances and

conditions a reasonable person would know, or have reason to know, that such conduct would, with a high degree of probability, result in harm to another.

38. Upon information and belief, slip and fall injuries are a nationwide problem for Blazin' Wings/Buffalo Wild Wings because of its failure to establish and implement fall prevention practices and policies as alleged in this Complaint.

39. As a result of defendant's willful and wanton misconduct and/or its negligence, plaintiff suffered serious injuries. Injuries include, but are not limited to, impaction fracture to his shoulder, partial rotator cuff tear, and other injuries.

40. Treatment for plaintiff's injuries included surgery for his shoulder and other injuries.

41. Plaintiff required additional follow-ups and post-operative care for several months after his shoulder surgery.

42. Plaintiff was unable to work for six (6) months after he was injured.

43. Defendant is liable for additional damages, including pain and suffering and general damages, which plaintiff has suffered and will continue to suffer in the future.

44. Defendant's conduct as set forth above included acts and omissions engaged in by defendant, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable person would know or have reason to know were highly likely to harm another. As a result, defendant is liable for punitive damages.

**WHEREFORE**, plaintiff prays that he be awarded judgment against the defendant for the following claimed elements of damage:

1. Medical expenses. The reasonable expense of necessary medical care, treatment, and services received to date and any medical expense reasonably probable to be incurred in the future;

2. Disability and/or disfigurement;

3. The pain, suffering, and emotional distress experienced because of the injuries and those reasonably probable to be experienced in the future;

4. Loss of earnings and earning capacity, including the value of time, earnings, profits, salaries lost to this date; also, the present cash value of any earnings reasonably probable to be lost in the future considering any lost earning capacity of plaintiff;

5. Loss of enjoyment of life and any loss of enjoyment of life reasonably probable to be experienced in the future;

6. Caretaking. The reasonable expense of necessary help in the home that has been required because of the injury and any such help that is reasonably probable to be required in the future;

7. For punitive damages;

8. For all other general damages and special damages;

9. For interest as allowed by law;

10. For costs of this action;

11. And for such other and further relief as the Court deems just and reasonable.

DATED this 16th day of December, 2020.

JOHN DAVID AUTHEMENT, PLAINTIFF

By: _____
R. Michael Shickich, Bar #6-3015
Law Offices of R. Michael Shickich, LLC
Attorney for Plaintiff
1204 East 2nd Street
Casper, WY  82601
P: (307)266-5297
F: (307) 266-1261